IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT VALLES, | No. C 04-2871 MMC (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| A. KANE, Warden of Correctional Training Facility, and the BOARD OF PRISON TERMS, | |
| Respondents. | |

On July 15, 2004, petitioner Albert Valles, a California prisoner proceeding pro se, filed the above-titled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the decision by the Board of Prison Terms ("Board") denying him parole in 2002. On September 27, 2004, the Court ordered respondent Warden Kane to show cause why the petition should not be granted based on petitioner's cognizable claims for relief. Respondents Kane and the Board[1] filed an answer accompanied by a memorandum and exhibits, and petitioner filed a traverse. After being granted leave to do so by the Court, respondents filed a supplemental answer, and petitioner filed a supplemental traverse. For

---

[1] Petitioner named Warden Kane as the respondent in his petition. Although the respondent in a habeas corpus proceeding is the person having custody of the person detained, see 28 U.S.C. 2243, the answer was filed on behalf of the Board, as well, because petitioner claims the Board's actions violated his constitutional rights.

the reasons set forth below, the petition will be denied.

## BACKGROUND

On January 15, 1991, the Superior Court of California, County of Los Angeles, ("Superior Court") sentenced petitioner to a term of fifteen years to life in prison upon acceptance of petitioner's plea of no contest to a charge of second degree murder. (See Answer Exs. A, B.) The events giving rise thereto were summarized in the probation report prepared for the Superior Court for sentencing purposes. (See Answer Ex. D at 2-3.) The Board read the summary of events into the record at petitioner's initial parole suitability hearing in 1999, (see Answer Ex. G at 5-7 ), and at petitioner's 2002 parole suitability hearing, the Board incorporated by reference the summary from the 1999 hearing record to establish the facts of petitioner's commitment offense, (see Answer Ex. F at 7 ). Petitioner did not object to the factual summary at either of his hearings, and the Court includes the summary here:

> On May 12, 1990, at 12:20 a.m., Ricardo Valles, Alberto Valles, Ortega, Mendez, Caudillo, and Magana, acting in concert attacked 19-year-old victim Jesse Jiminez with beer cans, fists and feet with Ricardo Valles subsequently firing the fatal shot into the head of the victim.
>
> At that date and time, the victim and a female friend had gone to a discount liquor store to buy a six pack of beer. After the victim had purchased the beer, he and his friend walked out of the store toward the victim's car which he had parked in front. Suddenly, the victim turned and began running back inside the door, followed closely by the defendants. The defendants were throwing full beer cans at the victim who ran around the counter. He was followed around the counter by several of the defendants who knocked him to the ground and began beating the victim with their fists and continuing to throw beer cans and other merchandise at him. In the meantime, Ricardo Valles – according to witnesses – jumped on top of the counter, leaned over and fired one shot from a revolver. After firing the first round, the gun jammed. Ricardo Valles then struggled with the gun, trying to get it unjammed. While this was going on, the other defendants continued to beat the victim. Ricardo Valles then leaned over the counter top and fired a [sic] another round at the victim who was lying on the floor. After firing the shot, all of the defendants left the store. Police and paramedics were called to the location and the victim was transported to the Pomona Valley Hospital with a gunshot wound to the head. Four days later, he was pronounced dead.

(See Answer Ex. D at 1-2.)

The incident at the liquor store was recorded by a security video camera. With the help of an informant and witnesses, police were able to identify all of the assailants, and

subsequently arrested them. (See id. at 4.) Petitioner, Ricardo Valles's brother, was one of those arrested. Petitioner told police he just happened to arrive at the liquor store at the same time the others did, he did not know any of the other people involved, and he did not do anything. (See id. at 4-5.) He admitted he was a member of the "Pomona Sur" Gang. (See id. at 5.)

On June 16, 1999, at petitioner's initial parole suitability hearing, the Board found petitioner unsuitable for parole, stating he "would pose an unreasonable risk of danger to society and a threat to public safety if released from prison." (See Answer Ex. G at 36:8-10.) The Board explained the offense had been carried out in "an especially cruel and callous manner," (see id. at 36:10-11), "a dispassionate and calculated manner, such as an execution style murder," (see id. at 36:12-13), and "a manner which demonstrates an exceptionally callous disregard for human suffering" (see id. at 36:15-16). The Board further observed the victim had been abused during the offense, (see id. at 36:14), and "the motive for the crime was inexplicable and very trivial in relation to the offense," (see id. at 36:17-18.) The Board also pointed to petitioner's escalating pattern of criminal conduct, his history of unstable or tumultuous relationships with others, and his "failure to profit from society's previous attempts to correct his criminality." (See id. at 36:22-26.) The Board further noted that the District Attorney opposed parole. (See id. at 37:9-10). The Board commended petitioner for "upgrading vocationally, educationally and participating in some self-help programming," but found, "[t]hese positive aspects of his behavior do not outweigh the factors of unsuitability." (See id. at 37:22-26.) Consequently, the Board concluded petitioner needed to participate in additional therapy, because he "continues to be unpredictable and a threat to others." (See id. at 37:15-16.) The Board denied petitioner parole for a period of three years. (See id. at 38:1.)

On June 20, 2002, at petitioner's second parole suitability hearing, the Board again determined petitioner was "not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison," (see Answer Ex. F at 45:9-12). The Board found that,

3

> [t]he offense was carried out in an especially cruel and callous manner. The offense was carried out in a dispassionate and calculated manner such as an execution-style murder. The victim was abused during the offense. The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human sufferings [sic]. The motive for the crime was inexplicable and very trivial in relationship to the offense . . . .

(See id. at 45:13-22.) The Board explained its conclusions were drawn from the facts of the crime, wherein petitioner and his partners "attacked an innocent young man," and beat and shot him to death. (See id. at 45:24-46:6.) The Board further noted petitioner's unstable relationships, including his history of involvement in street gangs, as well as his substance abuse problems, prior criminality, and previous encounters with the criminal justice system. (See id. at 46:9-21.) The Board found petitioner had not sufficiently participated in self-help therapy, (see id. at 46:22-23), and pointed to the District Attorney's and victim's family's continued opposition to parole. (See id. at 47:8-14.)

The Board also relied upon a February 1, 1999, Mental Health Evaluation Report prepared by M. Carswell, Ph.D., a staff psychologist, that was not "totally supportive" of release, (see id. at 46:25-26), and a 2002 report prepared by petitioner's prison counselor, M.S. Morton, which found petitioner posed a "moderate degree of threat" if released to the community, (see id. at 47:16-19). The Board concluded: "[T]he petitioner needs therapy in order to face, discuss, understand and cope with stress in a non-destructive manner so that he can better understand, cope with his culpability in this particular life crime, that he doesn't minimize his involvement in the particular crime. Until progress is made, the prisoner continues to be unpredictable and a threat to others." (See id. at 47:21-48:2.)

The Board acknowledged petitioner had viable parole plans, (see id. at 47:6), and lauded him for his exemplary, disciplinary-free record in prison, and his continued participation in various self-help and work-related programs. (See id. at 48:2-13.) The Board found, however, that "these positive aspects" of petitioner's behavior "don't outweigh factors of unsuitability at this time." (See id. at 48:13-15.) The Board denied petitioner parole for the next two years.

Petitioner filed a petition for a writ of a habeas corpus in the Superior Court,

challenging the Board's decision. The Superior Court denied the petition on December 13, 2002, stating: "[The] Court finds no facts to support issue raised, only defendant's argument and conclusions why defendant should be granted parole. Furthermore, the Court has no jurisdiction on this issue." (See Answer Ex. J.) Petitioner subsequently filed petitions for a writ of habeas corpus in the California Court of Appeal and the California Supreme Court, both of which were summarily denied. (See id.) Petitioner thereafter filed the instant petition, in which he claims the Board violated his federal constitutional rights in 2002 by denying him parole (1) without sufficient evidence to support its decision that his release would pose an unreasonable risk to public safety, and (2) in violation of his plea agreement.

## DISCUSSION

**A.     Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a habeas petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." See 28 U.S.C. § 2254(d). Section 2254(d) applies to a habeas petition from a state prisoner challenging the denial of parole. Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1126-27 (9th Cir. 2006).

A decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." See Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). An "unreasonable application" of federal law occurs "if the state court identifies the correct governing legal principle from the [Supreme Court's]

1 decisions but unreasonably applies that principle to the facts of the prisoner's case." See id.
2 at 75. "The 'unreasonable application' clause requires the state court decision to be more
3 than incorrect or erroneous." Id. "The state court's application of clearly established law
4 must be objectively unreasonable." Id. An "unreasonable determination of the facts" occurs
5 where "an appellate panel, applying the normal standards of appellate review, could not
6 reasonably conclude that the finding is supported by the record" or "that the state court's
7 fact-finding process was adequate." See Taylor v. Maddox, 366 F.3d 992, 1000 (2004).

8       In determining whether to grant a petition, a federal court must analyze the state
9 court's "last reasoned decision." Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005).
10 Here, the "last reasoned decision" is the Superior Court's order of December 13, 2002. (See
11 Answer Ex. J.)

12 **B.     Subject Matter Jurisdiction**

13       In a supplemental answer to the petition, respondents assert that the present petition
14 should be dismissed for lack of subject matter jurisdiction, because petitioner has no
15 constitutionally protected liberty interest in parole.

16       While there is "no constitutional or inherent right of a convicted person to be
17 conditionally released before the expiration of a valid sentence," Greenholtz v. Inmates
18 of Nebraska Penal & Corr. Complex, 442 U.S. 1, 7 (1979), a state's statutory parole scheme,
19 if it uses mandatory language, may create a presumption that parole release will be granted
20 when, or unless, certain designated findings are made, and thereby give rise to a
21 constitutionally protected liberty interest, see id. at 11-12. Where such mandatory language
22 is used, a prisoner gains a legitimate expectation in parole that cannot be denied without
23 adequate procedural due process protections. See id. at 11-16.

24       Respondents filed their supplemental answer in reliance upon In re Dannenberg, 34
25 Cal. 4th 1061 (2005), in which the California Supreme Court addressed various aspects of
26 California's parole scheme. Since then, the Ninth Circuit has squarely rejected respondents'
27 argument, and has made clear that "California inmates continue to have a liberty interest in
28 parole after [Dannenberg]." Sass, 461 F.3d at 1125. Consequently, in accord with Sass,

6

1 petitioner was entitled to the protections of due process at his parole suitability hearing, and
2 the Court has subject matter jurisdiction over the petition.

**C.    Petitioner's Claims**

    **1.    Denial of Due Process**

Petitioner contends the Board violated his right to due process by denying him parole in 2002 because the Board's decision was not supported by some evidence.

According to "clearly-established" federal law, a parole board's decision must be supported by "some evidence" to satisfy due process. See id. at 1128-29. "[The] some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.'" Id. at 1129 (quoting Superintendent v. Hill, 472 U.S. 445, 457 (1985)). "To determine whether the some evidence standard is met 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.'" Id. at 1128 (quoting Hill, 472 U.S. at 455-56.) "Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached'" by the Board. See id. (quoting Hill, 472 U.S. at 455-56.)

When assessing whether a state parole board's suitability determination was supported by "some evidence," the Court's analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state. Irons v. Carey, --- F.3d ---, 2007 WL 2027359, at *3 (9th Cir. July 13, 2007). In California, the criteria for determining whether a life prisoner is suitable for parole are set forth at title 15, § 2402, of the California Code of Regulations. The opening paragraph of § 2402(a) states: "Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." See Cal. Code Regs. tit. 15, § 2402(a). Circumstances "tending to indicate unsuitability" for parole include whether (1) "[t]he prisoner committed the offense in an especially heinous, atrocious or cruel manner;" (2) the prisoner has a "[p]revious [r]ecord of [v]iolence;" (3) the prisoner has an "[u]nstable [s]ocial [h]istory;" (4) the prisoner has

7

previously committed a "[s]adistic [s]exual [o]ffense;" (5) "[t]he prisoner has a lengthy history of severe mental problems related to the offense;" and (6) "[t]he prisoner has engaged in serious misconduct in prison or jail." See Cal. Code Regs. tit. 15, § 2402(c).  Factors to be considered in determining whether the offense was committed "in an especially heinous, atrocious or cruel manner" include:

> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
>
> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
>
> (C) The victim was abused, defiled or mutilated during or after the offense.
>
> (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
>
> (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

See id.

Circumstances "tending to indicate suitability" for parole include: (1) "[t]he prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims;" (2) the prisoner has a "[s]table [s]ocial [h]istory;" (3) "[t]he prisoner performed acts which tend to indicate the presence of remorse;" (4) "[t]he prisoner committed his crime as the result of significant stress in his life, especially if the stress has built over a long period of time;" (5) "the prisoner suffered from Battered Woman Syndrome;" (6) "[t]he prisoner lacks any significant history of violent crime;" (7) "[t]he prisoner's present age reduces the probability of recidivism;" (8) "[t]he prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release;" and (9) "[i]nstitutional activities indicate an enhanced ability to function within the law upon release." See Cal. Code Regs. tit. 15, § 2402(d).

The Board's 2002 denial of parole was based in part on findings that petitioner posed an unreasonable risk of danger to public safety because "[t]he offense was carried out in an especially cruel and callous manner." See Cal. Code Regs. tit. 15, § 2402(c)(1); (see also Answer Ex. F at 45:13-14, 48:21-22).  Specifically, the Board stated, the victim was

1  "abused" during the offense and "the motive for the crime was inexplicable and very trivial
2  in relation to the offense." (See id. at 45:17-22, 49:2-7.)  Based on evidence the victim was
3  attacked and beaten severely by petitioner and several other individuals, was shot once by
4  petitioner's brother, was again beaten when the gun jammed, and then was shot a second
5  time in the head by petitioner's brother, the Board had "some evidence" that the victim was
6  abused. (See Answer Ex. G at 5-7.)  Further, because petitioner conceded he had no
7  motivation for killing the victim, other than his belief the victim was a rival gang member
8  and it was "either kill or be killed," the Board had "some evidence" to support its finding that
9  the motive for the crime was very trivial in relation to the offense. (See Answer Ex. F at 8:2-
10 15.)  The above-referenced facts similarly provide "some evidence" to support the Board's
11 findings that the offense "was carried out in a dispassionate and calculated manner such as an
12 execution-style murder," and "was carried out in a manner which demonstrates an
13 exceptionally callous disregard for human sufferings [sic]." (See id. at 45:13-20, 48:26-
14 49:5.)

   The Board also considered petitioner's previous record of violence, see Cal. Code
Regs. tit. 15, § 2402(c)(2), and based its denial of parole in part on its finding that petitioner
had an escalating pattern of criminal conduct and violence. (See Answer Ex. F at 46:8-9.)
Based on evidence of petitioner's history as a gang member, and his arrests as a juvenile for
auto theft, receiving stolen property, carrying a concealed weapon in a vehicle, carrying a
loaded firearm in a public place, robbery and assault, there was "some evidence" to support
the Board's finding. (See id. at 10:1-11:5.)

   The Board further considered petitioner's social history, see Cal. Code Regs. tit. 15,
§ 2402(c)(3), and based its denial of parole in part on its finding that petitioner had a history
of unstable, tumultuous relationships with others. (See Answer Ex. F at 46:9.)  Based on
evidence petitioner was "highly involved" with the 12th Street gang, that he had a substance
abuse problem with drugs and alcohol, and that he previously had been on probation and
confined at a juvenile detention center, but had not changed his ways, there was "some
evidence" to support the Board's finding. (See id. at 46:11-17.)

9

1     The Board also determined petitioner needed to participate in additional self-help
2 programs and therapy before he could be found suitable for parole, (see id. 46:21-34, 47:21-
3 26), and concluded that, "[u]ntil progress is made, the prisoner continues to be unpredictable
4 and a threat to others." (See id. at 48:1-2.) The Board noted the 1999 Mental Health
5 Evaluation Report from the prison psychologist, M. Carswell, was not totally supportive of
6 petitioner's release. Although the report found petitioner's violence potential, if released to
7 the community, to be "no more than the average level two inmate within the community," it
8 did not find petitioner's violence potential to be average or low relative to the general
9 population. (See Answer Ex. H at 5). The Board further noted petitioner's counselor had
10 concluded petitioner continued to pose a moderate degree of threat to the public if released.
11 (See Answer Ex. F at 47:15-19, Ex. I at 2.) These evaluations constituted "some evidence"
12 to support the Board's finding.
13     Petitioner contends the Board's continued reliance on his prior conduct and the nature
14 of the commitment offense violates due process. (See Petition at 5.) The Ninth Circuit,
15 however, has held that a denial of parole based on an unchanging factor, such as the gravity
16 of the offense, may constitute "some evidence" to justify a denial of parole. See Irons, 2007
17 WL 2027359, at *5 (holding Board's sole reliance on commitment offense in denying parole
18 comported with due process); Sass, 461 F.3d at 1129 (holding Board's reliance "on the
19 gravity of [petitioner's] convicted offenses in combination with his prior offenses . . .
20 amount[ed] to some evidence to support the Board's determination"); Biggs v. Terhune, 334
21 F.3d 910, 916 (9th Cir. 2003) ("[T]he parole board's sole supportable reliance on the gravity
22 of the offense and conduct prior to imprisonment to justify denial of parole can be initially
23 justified as fulfilling the requirements set forth by state law.") Although the Ninth Circuit, in
24 Biggs, stated that "[a] continued reliance in the future on an unchanging factor . . . runs
25 contrary to the rehabilitative goals espoused by the prison system and could result in a due
26 process violation," see Biggs, 334 F.3d at 917, this exception has never been applied by the
27 Ninth Circuit. Most recently, in Irons, the Ninth Circuit noted that it has never found a
28 violation of due process where the denial of parole was based solely on the gravity of the

10

offense, and the prisoner had not yet served the minimum number of years required by his sentence. See Irons, 2007 WL 2027359, at *6. In the instant case, petitioner had served only eleven years of his fifteen-years-to-life sentence when the Board denied him parole in 2002.

Lastly, other circumstances presented in the instant action are not materially distinguishable from those found not to warrant the granting of a habeas petition in Irons, Sass, and Biggs. Here, petitioner had received no disciplinary infractions during his period of incarceration, had participated in numerous self-help and educational classes, had developed several vocational skills, and had positive work reports. (See Answer Ex. F at 48:3-13.) The petitioner in Irons was "extremely industrious" in prison, maintained "average to exceptional job performance in every position he ha[d] occupied," and "received certificates of completion in several vocational training programs." See Irons, 2007 WL 2027359, at *2. Likewise, in Sass, the petitioner displayed "exemplary conduct in prison," had "detailed plans" for his release, received vocational training and certificates, and "had taken college classes, for which he received all A's except for one B minus." See Sass, 461 F.3d at 1136 n.16 (Reinhardt, dissenting). Similarly, the petitioner in Biggs was a "model inmate," received praise from his supervisors for his "skills and efforts," received certification from the FAA in two aviation programs, and earned Associate's, Bachelor's and Masters in Business Administration degrees. See Biggs, 334 F.3d at 912. The Ninth Circuit nonetheless found the petitioners' accomplishments in Irons, Sass, and Biggs insufficient to require a grant of parole. See Irons, 2007 WL 2027359, at *5; Sass, 461 F.3d at 1129; Biggs, 334 F.3d at 916.

In sum, the Board had "some evidence" to support its decision to deny petitioner parole in 2002. See Sass, 461 F.3d at 1129.

### 2. Breach of Plea Bargain

Petitioner next argues the Board's denial of parole breached the terms of his plea agreement, in violation of due process. (See Petition at 5.) He contends that, although he entered a plea of no contest to second degree murder, the Board denied parole by characterizing his conviction as one for first degree murder, by using terms such as

11

1  "calculated" and "execution-style" to describe the commitment offense.  (See id. at 9.)  He
2  further contends the District Attorney breached the plea agreement by objecting to his
3  release, thereby advocating that he serve a longer term than is uniformly served for second
4  degree murder. (See id.)

5      "[D]ue process rights conferred by the federal constitution allow [a defendant] to
6  enforce the terms of the plea agreement." Brown v. Poole, 337 F.3d 1155, 1159 (9th Cir.
7  2003).  Plea agreements are construed using the ordinary rules of contract interpretation.  See
8  id. at 1159.  "[W]hen a plea rests in any significant degree on a promise or agreement of the
9  prosecutor, so that it can be said to be a part of the inducement or consideration, such
10 promise must be fulfilled."  Santobello v. New York, 404 U.S. 257, 262 (1971); see also
11 Brown, 337 F.3d at 1159 (holding prosecutor's promise that petitioner would be released on
12 parole after serving half the minimum sentence discipline-free was binding).

13     Assuming all of petitioner's allegations are true, he has failed to state a claim for relief
14 because he has not alleged the prosecutor made any promise that petitioner would be released
15 on parole.  See Murphy v. Espinoza, 401 F. Supp. 2d 1048, 1053 n.7 (C.D. Cal. 2005)
16 ("Brown is inapposite because the prosecution here never promised petitioner he would be
17 released in 7-1/2 to 10 years, or even 15 years.").  A review of the plea transcript and the
18 sentencing transcript shows the absence of any promise by the District Attorney's Office as
19 to when petitioner would be released from prison.  (See Answer Exs. B, C.)  The only
20 statement made to petitioner at the plea hearing was that he would be sentenced to fifteen
21 years to life, (see Answer Ex. B at 3:23-4:12), and the only statement made to petitioner at
22 the sentencing hearing was that he "shall serve 15 years to life in state prison," (see Answer
23 Ex. C at 2:23).  Further, there is no evidence to support petitioner's contention that, because
24 of the plea agreement, the Board was prohibited from characterizing his crime in a certain
25 manner when considering his suitability for parole.  The Board's findings could not, and did
26 not, breach any agreement entered into between petitioner and the District Attorney's Office.

27     Lastly, petitioner's contention that the plea agreement was breached because the
28 District Attorney advocated that he serve longer than the "uniform" term because of the

12

nature of the crime, also is without merit. The California Supreme Court held, in <u>In re Dannenberg</u>, 34 Cal. 4th 1061, 1098 (2005), that the Board is not required to set uniform parole dates for prisoners convicted of similar offenses before assessing a prisoner's parole suitability in light of public safety.

### 3. **Summary**

For the reasons set forth above, the state court decision upholding the Board's 2002 denial of parole was not "contrary to" or an "unreasonable application of" clearly established Federal law, or "an unreasonable determination of the facts in light of the evidence presented" in the state court proceedings. <u>See</u> 28 U.S.C. § 2254(d). Accordingly, the petition for a writ of a habeas corpus will be denied.

## CONCLUSION

For the reasons set forth above, the petition for a writ of a habeas corpus is hereby DENIED.

The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

DATED: August 15, 2007

_____
MAXINE M. CHESNEY
United States District Judge